United States Court of Appeals,

Fifth Circuit.

No. 91–1658.

Doris Hill SHIRLEY, Plaintiff–Appellee,

v.

CHRYSLER FIRST, INC., Defendant–Appellant.

Aug. 27, 1992.

Appeal from the United States District Court for the Northern District of Mississippi.

Before SMITH and EMILIO M. GARZA, Circuit Judges, and RAINEY, District Judge.[*]

EMILIO M. GARZA, Circuit Judge:

Afr Doris H. Shirley was terminated from her employment with Chrysler First, Inc., she brought suit in the district court, alleging retaliation for her filing of an EEOC charge against Chrysler, and age and sex discrimination. After a bench trial, the district court found for Shirley on the retaliation claim, but for Chrysler on the age and sex claims. On appeal, Chrysler contends that the district court incorrectly found that Shirley's termination was the result of retaliation, that the passage of fourteen months between Shirley's EEOC complaint and her discharge indicates that her discharge was not the result of retaliation, and that Shirley was improperly awarded front pay as damages. Finding no error, we affirm.

I

The facts of this case are uncomplicated and straightforward. Shirley worked in the Tupelo, Mississippi branch of Chrysler as a unit manager since 1980. In September 1988, Shirley filed a charge against Chrysler with the Equal Employment Opportunity Commission ("EEOC"). The EEOC investigated the charge and determined that the evidence did not establish a Title VII violation.[1] The EEOC subsequently dismissed Shirley's charge on September 21, 1989.

_____

[*]District Judge of the Southern District of Texas, sitting by designation.

[1]See 42 U.S.C.A. § 2000e–2 (West 1981).

In November 1989, approximately fourteen months after Shirley filed the charge, Chrysler terminated her employment. Shirley testified that her immediate supervisor, Bob Garner, mentioned her EEOC complaint to her frequently.[2] When Garner testified about Shirley's inappropriate activities at work,[3] Shirley denied that her actions were inappropriate and stated that she did not falsify documents or accept inaccurate information on loan applications. On December 1, 1989, Shirley filed a complaint against Chrysler in federal court, alleging age discrimination in violation of 29 U.S.C. § 623(a), sex discrimination in violation of 42 U.S.C. § 2000e–2, and unlawful retaliation for filing her EEOC charge, in violation of 29 U.S.C. § 623(d) and 42 U.S.C. § 2000e–3(a).

After a bench trial, the district court found for Chrysler on the sex and age discrimination claims. However, the district court found for Shirley on the retaliation claim. The district court awarded Shirley damages of approximately $63,000. Chrysler filed a motion to alter or amend the judgment or for new trial, and the district court denied this motion.

## II

### A

Chrysler contends that the district court erred in finding that Shirley's termination was in retaliation for her previous filing of an EEOC complaint, in violation of 42 U.S.C. § 2000e–3(a) and 29 U.S.C. § 623(d). We review the district court's factual findings for clear error and its conclusions of law for legal error.[4]

---

[2]Bob Garner testified that he never mentioned the EEOC charge to Shirley. Chrysler presented the testimony of two former Chrysler employees, Lisa Goldsmith and Angela Porter, to corroborate Garner's testimony.

[3]Chrysler presented testimony that Shirley: (1) accepted an obviously falsified document as a basis for credit; (2) told another person to falsify some information on a loan application; and (3) accepted inaccurate information on a credit application without properly checking the information.

[4]Chrysler's notice of appeal states that it appeals from the Order Denying Motion To Alter or Amend Judgment or for New Trial and from the Order Granting Plaintiff's Motion for Attorneys' Fees. When a notice of appeal designates the denial of a motion for new trial or to alter or amend judgment, and "if, from the proceedings on appeal and from the notice of appeal itself, it becomes

Chrysler contends that its motion for new trial or motion to alter or amend judgment should have been granted, because the district court erred in finding that Shirley's termination was in retaliation for her previous filing of an EEOC complaint, in violation of 42 U.S.C. § 2000e–3(a) and 29 U.S.C. § 623(d).  We disagree.

Section § 2000e–3(a) of Title 42 prohibits an employer from "discriminat[ing] against any of his employees ... because [the employee] has ... made a charge ... under this subchapter."  42 U.S.C.A. § 2000e–3(a) (West 1981).  Similarly, the Age Discrimination in Employment Act ("ADEA") prohibits an employer from discriminating against an employee who has made a charge or participated in a proceeding under this act.  *See* 29 U.S.C.A. § 623(d) (West 1985).  A plaintiff establishes a prima facie case of retaliation by showing:  (1) that she engaged in activity protected by Title VII or the ADEA;  (2) that an adverse employment action occurred;  and (3) that there was a causal connection between the participation in the protected activity and the adverse employment decision.  *See Jones v. Flagship Int'l,* 793 F.2d 714, 724 (5th Cir.1986) (Title VII case) (citations omitted), *cert. denied,* 479 U.S. 1065, 107 S.Ct. 952, 93 L.Ed.2d 1001 (1987);  *Hollander v. American Cyanamid Co.,* 895 F.2d 80, 85 (2d Cir.1990) (ADEA case).  Once the prima facie case is established, the burden of producing some nondiscriminatory reason falls upon the defendant.  *See EEOC v. J.M. Huber Corp.,* 927 F.2d 1322, 1326 (5th Cir.1991) (citation omitted).  The employee then assumes the burden of showing that the reasons given were a pretext for retaliation.  *Id.*[5]

apparent that the appeal was intended to have been taken from an unspecified judgment", we treat the appeal as one from the underlying judgment.  *See Hogue v. Royse City, Tex.,* 939 F.2d 1249, 1251–52 (5th Cir.1991);  *Osterberger v. Relocation Realty Serv. Corp.,* 921 F.2d 72, 73 (5th Cir.1991).

[5]The ADEA anti-retaliation provision is related to the anti-retaliation provision of Title VII, and cases interpreting the latter provision are frequently relied upon in interpreting the former.  *See Passer v. American Chemical Soc'y,* 935 F.2d 322, 330 (D.C.Cir.1991) (citations omitted);  *cf. Burns v. Texas City Refining, Inc.,* 890 F.2d 747, 750 (5th Cir.1989) (in ADEA cases in which there is no direct evidence of age discrimination, the same evidentiary procedure formulated for Title VII cases applies) (citation omitted);  *Merrick v. Farmers Ins. Group,* 892 F.2d 1434, 1441 (9th Cir.1990) ("Those circuits that have considered ADEA retaliation claims have generally adopted the analysis used in Title VII cases without comment."), *citing Powell v. Rockwell Int'l Corp.,* 788 F.2d 279, 284–85 (5th Cir.1986) (other citations omitted).

The parties agree that Shirley passes the first two prongs of the retaliation test, as she filed an EEOC claim alleging age and sex discrimination, and that she was terminated from her position. They disagree, however, about the causal connection between her termination and the protected activity. Chrysler asserts that Shirley presented insufficient evidence of retaliation to the district court and that there is no causal connection between her filing the EEOC complaint and her subsequent termination. Chrysler asserts that it is only Shirley's self-serving, conclusory and uncorroborated statements which support her claim. Furthermore, Chrysler contends that, even if Shirley has established a prima facie case of retaliation, Chrysler has articulated a legitimate, nondiscriminatory reason for the discharge—the three instances of alleged credit falsification.[6] Shirley counters these arguments by asserting that, but for her filing of the EEOC complaint, she would not have been terminated.

The district court's finding that Chrysler retaliated against Shirley for filing an EEOC complaint is not clearly erroneous. Shirley filed her EEOC complaint in September 1988, and the EEOC dismissed the complaint in September 1989. Only two months later, in November 1989, Shirley was fired. Shirley presented evidence, albeit her own testimony, that her boss, Bob Garner, mentioned her EEOC complaint to her at least twice a week and "harassed [her] to death about it." Shirley testified that Garner was "trying to run [her] off" and was "real abusive" to her as he made disparaging comments about her EEOC complaint. Furthermore, Shirley stated that prior to her discharge she had never been placed on probation, and not suspended until after she had filed her EEOC complaint—her performance evaluations indicate no such problem.[7] A former supervisor,

---

[6]*See supra note* 3 and accompanying text.

[7]*See* Record on Appeal, Plaintiff's Exhibits 3–13, 21 (Shirley's Performance Evaluations dated 3/9/81 ["Doris is a very knowledgeable and hardworking individual"], 9/1/81/ ["exceeds her job requirements"], 3/15/82 ["a very dependable employee"], 1/24/83 ["Doris is a very valuable employee"], 6/15/83 ["Doris is a valuable employee"], 12/16/83 ["Doris is a very good employee & a hard worker"], 6/15/84 ["Doris had made improvements in all areas of office routine. She is a very hard worker & takes pride in her work. She is an asset to this branch."], 8/12/84 [overall rating "far exceeded"], 2/27/85 [overall rating "exceeded"], 3/3/86 [overall rating "fully met at times exceeded"], 11/4/86 [overall rating "fully met", "very dependable with GOOD ATTITUDE"], 11/10/87 [overall performance "fully met").

Charles Pate, testified that Shirley had always fulfilled her job requirements. We find it surprising that suddenly, after Shirley filed her EEOC complaint, problems with her work surfaced. As the district court succinctly noted:

> After [Shirley] was denied the promotion to the branch manager's job, she filed her claim alleging sex and/or age discrimination with the EEOC. Approximately fourteen months later, plaintiff was discharged. It is especially noteworthy that after having been a faithful employee of this corporation for about nine years without ever having been reprimanded orally or in writing for any type of conduct, and having had prior experience in the loan related fields before working for Chrysler First, the defendant suddenly found three so-called flagrant indiscretions or violations, which it accused this plaintiff of committing, namely, the altering of loan records.

Record on Appeal, vol. II, at 335–36 (district court's findings of fact and conclusions of law).

The district court found that "but for" Shirley's EEOC complaint, she would not have been terminated. Since this finding is not clearly erroneous, the court did not err in entering judgment in favor of Shirley. *See Jack v. Texaco Research Ctr.,* 743 F.2d 1129, 1131 (5th Cir.1984) (employee must prove there was a causal connection between the protected activity and the adverse employment decision; the connection required is causation-in-fact or "but for" causation).

B

In a related argument, Chrysler argues that the passage of fourteen months between the filing of Shirley's initial EEOC charge and Chrysler's alleged retaliatory conduct serves as direct, probative evidence that the termination of Shirley's employment was not related to her filing the EEOC complaint against Chrysler. In essence, Chrysler argues that the passage of fourteen months should be legally conclusive proof against retaliation. We disagree.

Chrysler points to an Eighth Circuit decision in which the court set forth a fourth requirement for establishing a prima facie case of retaliation. *See Couty v. Dole,* 886 F.2d 147, 148 (8th Cir.1989) (citations omitted). In *Couty,* the court stated that a plaintiff must show "that the discharge followed the protected activity so closely in time as to justify an inference of a retaliatory motive." *Id.*

Chrysler also points to decisions from the District of Columbia, Sixth and Eleventh Circuits that have discussed how much weight should be given a lapse of time.[8] Chrysler points to no Fifth Circuit cases discussing this point.

Shirley cites *Hamilton v. Rodgers,* 791 F.2d 439 (5th Cir.1986), in which we considered a district court finding of retaliation under Title VII, in which the plaintiff's deceased husband had filed an EEOC charge in the fall of 1980, and then was suspended and then reinstated at a lower rank and with less pay in the summer of 1982. Consideration of such dates is part of our analysis, but not in itself conclusive of our determinations of retaliation. *See, e.g., Jones v. Flagship Int'l,* 793 F.2d 714 (5th Cir.1986) (Jones failed to establish that Flagship engaged in unlawful retaliation under Title VII; district court considers protected activity, adverse employment action and causal connection between the two; EEOC charged filed on February 3, 1982, Jones' employment terminated on April 15, 1982), *cert. denied,* 479 U.S. 1065, 107 S.Ct. 952, 93 L.Ed.2d 1001 (1987); *Wilson v. Monarch Paper Co.,* 939 F.2d 1138 (5th Cir.1991) (ADEA retaliation case—in upholding jury finding of no retaliation, court notes that EEOC charge was filed in January 1983, plaintiff hospitalized in March 1983 and it was not until 1987 that his illness began remission; suit against defendants filed on February 27, 1984). We see no reason to adopt Chrysler's position and expand the requirements for establishing a prima facie case of retaliation. The district court considered the lapse of time, but found that it did not absolve defendant of its responsibility for retaliating against the plaintiff for her filing the EEOC claim. The district court properly weighed the lapse of time as one of the elements in the entire calculation of whether Shirley had shown a causal connection between the protected

---

[8]Chrysler cites *Mitchell v. Baldrige,* 759 F.2d 80, 86 (D.C.Cir.1985) ("causal connection component of prima facie case may be established by showing that the employer had knowledge of the employee's protected activity, and that the adverse personnel action took place shortly after that activity."); *West v. Fred Wright Constr. Co.,* 756 F.2d 31 (6th Cir.1985) (upholding district court decision that appellant had failed to establish retaliation as determining factor in his discharge—district court found that seven months between filing the charge and appellant's discharge was too long a period from which to infer retaliation); *Donnellon v. Fruehauf Corp.,* 794 F.2d 598, 601 (11th Cir.1986) (short period of time [one month] between the filing of the discrimination complaint and plaintiff's discharge belies any assertion by the defendant that the plaintiff failed to prove causation).

activity and the subsequent firing.

C

Chrysler also asserts that the district court's award of front pay to Shirley was speculative and improper because Shirley's position no longer existed in Chrysler's organization after Shirley was terminated. Front pay is awarded to compensate the plaintiff for lost future wages and benefits. We review an award of front pay for an abuse of discretion. *See Burns v. Texas City Refining, Inc.,* 890 F.2d 747, 753 (5th Cir.1989) (ADEA case); *Floca v. Homcare Health Services, Inc.,* 845 F.2d 108, 112–13 (5th Cir.1988) (Title VII case).

The district court awarded Shirley two years' salary as front pay, plus her lost wages, resulting in a total award of approximately $63,000.[9] In explaining its decision to award front pay, the district court noted that the function of Chrysler's Tupelo office has changed—it is no longer a branch and does not have a branch manager. The office is now a satellite office and is composed of an account executive and a credit specialist. Nevertheless, the district court concluded that Shirley's position was "still there in one form or another."[10]

Chrysler objects to this district court finding regarding Shirley's position, arguing that she failed to prove that a position existed within Chrysler's organization that was the same or similar to the position from which she was terminated, and that without such proof, she is not entitled to front pay. Chrysler stated that the only proof relating to an available position was the evidence that a corporate reorganization had occurred, and her position no longer existed.

---

[9]The district court awarded Shirley two years' salary as front pay—$40,976. The remainder of the $63,000 was a back pay award.

[10]The district court also stated that it was not feasible to reinstate Shirley, because the tensions between her and Chrysler had risen to such a degree that it would not be in her best interest, nor Chrysler's, for her to return there.

Shirley, on the other hand, asserts that while there was no longer a credit manager[11] in the Tupelo office, there was a position of credit specialist. Indeed, the district court heard evidence which indicated that the position of credit manager was not different from the position of credit specialist.[12] The district court's finding that Shirley's position was "still there in one form or another" is not clearly erroneous.

Further, we do not believe the district court's award of front pay was an abuse of discretion—such awards are necessarily speculative. *See Burns,* 890 F.2d at 753 n. 4; *Reneau v. Wayne Griffin & Sons, Inc.,* 945 F.2d 869, 870 (5th Cir.1991) (ADEA case—"Calculations of front pay cannot be totally accurate because they are prospective and necessarily speculative in nature.") (citations omitted); *Sellers v. Delgado College,* 781 F.2d 503, 505 (5th Cir.1986) (Title VII case, court notes that "[f]ront pay can only be calculated through intelligent guesswork, and we recognize its speculative character by according wide latitude in its determination to the district courts."), *appeal after remand,* 839 F.2d 1132 (5th Cir.1988), *on remand,* 1989 WL 10753, 1989 U.S. Dist. LEXIS 1336 (E.D.La.1989), *aff'd,* 902 F.2d 1189 (5th Cir.), *cert. denied,* —— U.S. ——, 111 S.Ct. 525, 112 L.Ed.2d 536 (1990).

The calculations used by and the amount arrived at by the district court are unchallenged. Furthermore, Chrysler has not directed this court to any specific evidence showing that reinstatement was a possible alternative, or that the position of credit specialist was not comparable to that of credit manager. *See Sellers v. Delgado Community College,* 839 F.2d 1132, 1141 (5th Cir.1988) (in Title VII case, front pay appropriate when plaintiff did not remain in position at other place of

---

[11]The parties use the terms unit manager and credit manager interchangeably. For purposes of this discussion, we will use the term "credit manager."

[12]*See, e.g.,* Record on Appeal, vol. II, at 164–65 (cross-examination of Roy Cuniff, former Chrysler senior vice-president, testifying regarding new positions in Tupelo office); *Id.* at 12–13 (direct examination of Domenic Tavernit, area director of Chrysler, regarding unit manager position); *Id.* at 203–04 (cross-examination of Domenic Tavernit, area director of Chrysler, regarding Shirley's unit manager position).

employment—that job was not comparable to that in her first place of employment in terms of salary and promotional opportunities), *on remand,* 1989 WL 10753, 1989 U.S. Dist. LEXIS 1336 (E.D.La.1989), *aff'd,* 902 F.2d 1189 (5th Cir.), *cert. denied,* —— U.S. ——, 111 S.Ct. 525, 112 L.Ed.2d 536 (1990); *Floca v. Homcare Health Services, Inc.,* 845 F.2d 108, 112 (5th Cir.1988) (front pay is awarded to meet the goal of Title VII to make whole the victims of discrimination); *Reneau v. Wayne Griffin & Sons, Inc.,* 945 F.2d 869, 870 (5th Cir.1991) (under ADEA, front pay is appropriate when reinstatement is not feasible).

## III

For the foregoing reasons, we AFFIRM.