IN THE UNITED STATES COURT OF APPEALS

FOR THE FIFTH CIRCUIT

_____

No. 95-20463
_____


MARY ANN PATTON,

Plaintiff-Appellee,

versus

SCHLUMBERGER TECHNOLOGY CORPORATION,

Defendant-Appellant.
_____

Appeal from the United States District Court for the
Southern District of Texas
(CA-H-93-641)
_____

August 9, 1996

Before POLITZ, Chief Judge, and JOLLY and BARKSDALE, Circuit
Judges.

E. GRADY JOLLY, Circuit Judge:[*]

In this retaliation case, Schlumberger Technology Corporation
appeals a judgment entered in favor of Mary Ann Patton. The jury
found that Schlumberger had retaliated against Patton by firing her
almost two years after she filed--and more than fourteen months
after she dropped--an EEOC claim alleging sex and age
discrimination. The jury found $500,000 in damages, but the

---

[*]Pursuant to Local Rule 47.5, the court has determined that
this opinion should not be published and is not precedent except
under the limited circumstances set forth in Local Rule 47.5.4.

district court reduced the award to $333,552.08, including $33,552.08 in stipulated backpay, and $300,000 in compensatory damages, the maximum amount allowed under 42 U.S.C. § 1981a(b)(3). We hold that the evidence is insufficient to support the jury's verdict, and therefore reverse and render.

I

Patton began working for Schlumberger in February 1975 as a purchasing clerk. In 1986, Schlumberger laid off Patton, allegedly as part of a larger reduction in force. Patton filed an age discrimination charge with the EEOC claiming she had more seniority than another person in her office, and consequently should not have been terminated. Two weeks later, Patton was re-instated at a different location. She subsequently dropped the EEOC charge.

In 1989, Patton requested and was granted a transfer to the Houston Computing Center as a data services clerk. Jim Plato was the manager of the center and was Patton's supervisor. In March 1990, Patton's annual performance appraisal by Plato stated that Patton needed to improve the distribution of products to customers. On July 24, after finding seven unmailed products near Patton's desk, Plato prepared a memo placing Patton on probation until September 30. On July 31, Bobby Foret, Plato's supervisor and the Data Services Regional Manager, came to Houston to meet with Patton

about her probation.  Both Plato and Foret promised to remove the probation memo from Patton's file if her performance improved.

On August 10, Patton sent a letter to Rick Ingalls, a Schlumberger personnel manager, to rebut the probation memo.  On that same day, she filed an EEOC charge complaining that her probation violated Title VII and the ADEA.  Both Foret and Plato testified that after receiving a copy of her letter to Ingalls, they decided they must keep the probation memo in her file even if her performance improved, to document what had led to Patton's probation.  They concluded that her letter to Ingalls, standing alone in her file, would not have made sense.  Patton, however, testified that Plato, upon receiving a copy of the letter to Ingalls, commented that he would have to "build a case" against Patton.  In any event, Patton's performance improved and she was taken off probation, but the probation memo was never removed from her file.

In February 1991, Pat Parno replaced Plato as manager of Houston Computing Center.  Patton's annual performance appraisal in March 1991 indicated "some friction with co-workers" and "some problems [with distribution of products] earlier in the year, significant improvement in second half."  A few weeks after her annual review, Patton received a merit raise.  In May 1991, Patton withdrew her EEOC charge because of her favorable impression of

Parno as a manager, including his frequent use of thank-you notes to encourage Patton. In the months immediately following the withdrawal of her charge, she received thank-you notes for her cost-cutting efforts (July), her "last minute efforts" on monthly activity call-in results (August), and the improving quality of her invoices (September).

The noted improvements appear to have been short-lived, however. In October, a mid-year performance review indicated problems with her attitude, her organizational skills (and, consequently, her ability to do her job quickly), her level of initiative, and her ability to keep up on job knowledge.[1] In April 1992, in Patton's annual performance review, Parno rated her below standard in quantity of work and cooperation. It was around this time that Patton had a confrontation with Karel Grubbs, a log analyst who was Patton's acting supervisor in Parno's absence. Patton testified that when she complained of her inability to take vacations when she wanted because of a change in her schedule, Grubbs said, "That's the idea bitch. You're as good as gone. My objective from Pat Parno is to get rid of you, and consider yourself as good as gone." It is uncontested, however, that Grubbs

---

[1]Patton nevertheless received another thank-you note from Parno in March 1992 for advising Parno of upcoming vacation dates.

did not refer to the EEOC charge, and that Grubbs had no authority to terminate Patton.

In May 1992, Parno sent her another note thanking her for advising him of a delay in some reports.  In July 1992, Parno learned of pending lay-offs in the data services area.  Company policy provided that employees with unsatisfactory performance reviews and no significant improvement would be discharged prior to any lay-offs.  Thus, on July 27, 1992, Schlumberger discharged Patton.

II

Patton brought this suit in March 1993, claiming that she was terminated because of her age and sex, and in retaliation for filing an EEOC charge, in violation of the ADEA and Title VII. Patton withdrew her Title VII sex discrimination claim prior to trial. The jury returned a verdict for Schlumberger on Patton's ADEA claim, but for Patton on her retaliatory discharge claim. The jury found $500,000 in damages. Because the Civil Rights Act of 1991 limits compensatory damage awards for emotional pain, suffering, and mental anguish to $300,000, 42 U.S.C. § 1981a(b)(3) (1994), Patton's motion for entry of final judgment sought a damage award totaling $333,552.08 in damages, including $33,552.08 in stipulated backpay and $300,000 in compensatory damages. The district court entered final judgment awarding the $333,552.08 to Patton, and $50,000 in attorneys' fees. After Schlumberger's motion for judgment as a matter of law and alternative motions for new trial or remittitur were denied, it filed a timely notice of appeal.[2]

---

[2]We review a jury verdict for sufficiency of the evidence under the Boeing v. Shipman, 411 F.2d 365 (5th Cir. 1969) (en banc) standard, Rhodes v. Guiberson Oil Tools, 75 F.3d 989, 993 (5th Cir. 1996) (en banc), viewing the evidence and all reasonable inferences in the light most favorable to the verdict. Rideai v. Parkem Indus. Services, Inc., 917 F.2d 892, 897 (5th Cir. 1990).

III

Both Title VII and the ADEA prohibit an employer from retaliating against an employee for filing an EEOC claim. See 42 U.S.C. § 2000e-3(a); 29 U.S.C. § 623(d). This circuit has previously held that the McDonnell Douglas burden-shifting structure applies to retaliation claims. Long v. Eastfield College, No. 96-10526, 1996 WL 366004 at *2 (5th Cir. July 1, 1996) (citation omitted). A plaintiff establishes a prima facie case of retaliation by showing that: (1) she engaged in activity protected by Title VII or the ADEA; (2) an adverse employment action occurred; and (3) there was a causal connection between the protected activity and the adverse action. Grizzle v. Travelers Health Network, Inc., 14 F.3d 261, 267 (5th Cir. 1994) (citations omitted). Once the plaintiff establishes a prima facie case of retaliation, the burden of production shifts to the defendant to proffer a non-discriminatory reason for its action. Id. (citation omitted). If the defendant meets this burden, the plaintiff must demonstrate that the defendant's articulated rationale was a pretext for retaliation. Id. (citation omitted). Once a discrimination case has been fully tried on the merits, "the ultimate issue is whether the [sic] there was sufficient evidence for a reasonable trier of fact to conclude that the official reason for [the] discharge was `pretextual', and that the true reason

therefor was retaliation for her complaints of age discrimination." _Id._

In order for us to uphold a finding of retaliation the evidence must be sufficient to "demonstrate that `but for' the protected activity, she would not have been discharged." _Id._ (citing _Shirley v. Chrysler First, Inc._, 970 F.2d 39, 43 (5th Cir. 1992) (citing _Jack v. Texaco Research Ctr._, 743 F.2d 1129, 1131 (5th Cir. 1984)). According to _Jack_, "Whether or not there were other reasons for the employer's action, the employee will prevail only by proving that `but for' the protected activity she would not have been subjected to the action of which she claims." _Jack_, 743 F.2d at 1131. In other words, even if a plaintiff's protected conduct is a substantial element in a defendant's decision to terminate an employee, no liability for unlawful retaliation arises if the employee would have been terminated in the absence of the protected conduct. _Id._ at 1131.

IV

Schlumberger argues that the jury verdict was based on speculation and surmise because there was no evidence of any "causal nexus" between Patton's EEOC charge in August 1990 and her dismissal in July 1992. We agree. First, although not determinative standing alone, the nearly two-year time period between Patton's filing of her EEOC charge and her dismissal--and

the fourteen-month time period between the dropping of the charge and the dismissal--creates a strong presumption against retaliation.[3] Among previous discrimination cases in this circuit alleging retaliation for the filing of an EEOC charge, the longest interval between filing and termination has been fourteen months. Shirley, 970 F.2d at 41. In Shirley, however, the employee's supervisor made disparaging references to her concerning her EEOC charge at least twice a week, and alleged performance problems appeared only after she filed the charge. Id. at 43. These incriminating facts were critical evidence tying the discharge to protected activity, evidence totally lacking in Patton's case. In sum, we find Patton's claim of temporal proximity, without more evidence supporting causation, is insufficient to prove retaliation.

Although Patton points to other evidence, that evidence does nothing to bridge the time gap so as to establish a causal connection between her discharge and her protected activity. Parno, for example (the supervisor responsible for Patton's dismissal), never mentioned the EEOC charge, was not her supervisor when she filed the charge, and was not aware that the charge had been withdrawn. Indeed, Patton admitted that Parno initially

_____

[3]Patton's dismissal occurred almost six years after she filed her first EEOC charge in 1986.

-9-

treated her fairly and wrote her thank-you notes and comments of encouragement.  She also admitted on cross-examination that she could not say that Parno's treatment of her changed when she withdrew the EEOC charge, as she had claimed on direct examination. Furthermore, the record reveals no evidence that Plato, Patton's former supervisor, was hostile or negative toward her following the filing of the charge.  Patton only connected Plato's "build a case" comment as responsive to Patton's own rebuttal memo to Ingalls, not to the EEOC charge.

Finally, our review of the record convinces us that Patton did not seriously dispute the company's proffered reason for her discharge--i.e., she did not demonstrate that the defendant's articulated rationale was without merit and therefore was merely a pretext for retaliation.  Patton's performance problems were well documented before she filed an EEOC charge.  She did not successfully challenge the factual basis for her unsatisfactory performance rating leading to her dismissal concerning the quantity of her work and her lack of cooperation, nor did she offer evidence that disputed the objective facts underlying her poor performance appraisals.  Furthermore, she did not show any disparate treatment in the application of the company's policy of dismissing poor performers in advance of a layoff.  In short, Patton completely failed to adduce evidence, as was her burden, that her termination

would not have occurred but for her having engaged in protected activity.

V

The judgment of the district court is REVERSED and judgment is RENDERED for Schlumberger Technology Corporation.

REVERSED and RENDERED.