DeMOSS, Circuit Judge,
concurring in part and dissenting in part:
I concur in part II.A. of the majority opinion, which determines that Vadie’s claim of racial or national origin discrimination relating to the 1993 position openings was not timely filed and should have been dismissed by the district court and never submitted to the jury. I also concur in part II.B.l. of the majority opinion, which determines that no reasonable jury could conclude on the record in this case that intentional national origin discrimination was the basis for the denial of the 1995 faculty position to Vadie and that it was error for the district court to deny MSU’s motion for judgnent as a matter of law on this claim. I also concur in that part of part II.C. of the majority opinion, which determines that the jury’s award of $350,000 (which the district court reduced to $300,000 in light of the statutory caps) as compensatory damages “for emotional pain, suffering, inconvenience, or mental anguish” was disproportionate to the injuries sustained and that, therefore, it was error for the district court to deny MSU’s *379 motion for a new trial on this ground. Finally, I concur in part II.D. of the majority opinion, which affirms the district court ruling that Vadie was not entitled to reinstatement under the facts of this case.
I am not able to concur and therefore respectfully dissent as to the majority’s determination in part II.B.2. that the evidence in this case was sufficient to support the jury finding that MSU retaliated against Vadie and as to that portion of part II.C. holding that Vadie’s testimony as to emotional injury was sufficient to support an award of $10,000 as damages for emotional injuries resulting from the retaliation claim. I write, therefore, in detail to set forth my dissenting views.

The Retaliation Claim

In his complaints filed herein, Vadie asserted two, and only two, protected activities as the basis for his retaliation claim: first, his filing of a charge of discrimination under Title VII with the EEOC in January 1995, and second, his filing of his first complaint in this lawsuit in June 1995. Regarding those two asserted activities, Title VII provides in relevant part that “[i]t shall be an unlawful employment practice for an employer to discriminate against any of his employees ... because he has made a charge ... or participated in any manner ... in a[ ] hearing under this subchapter.” 42 U.S.C. § 2000e-3(a) (emphasis added). A retaliation claim, therefore, has three elements: (1) the employee engaged in an activity protected by Title VII; (2) the employer took adverse employment action against the employee; and (3) a causal connection exists between that protected activity and the adverse employment action. See Mattern v. Eastman Kodak Co., 104 F.3d 702, 705 (5th Cir.1997) (citing Shirley v. Chrysler First, Inc., 970 F.2d 39, 42 (5th Cir.1992)). There is no dispute in this case that Va-die’s filing of a discrimination charge with the EEOC in January 1995 and his filing of this suit in June 1995 are protected activities. Likewise, there is no dispute in this case that MSU’s decision not to hire Vadie to fill the faculty vacancy that occurred in August 1995 can be considered an adverse employment decision. The validity or not of the retaliation claim turns then on whether Vadie proved that the adverse employment decision was causally related to the protected activity.
It is very clear under our case law that Vadie has the ultimate burden of showing “that ‘but for’ the protected activity, the [adverse employment action] would not have occurred, notwithstanding the other reasons advanced by the defendant (employer).” McMillan v. Rust College, Inc., 710 F.2d 1112, 1116 (5th Cir.1983); see also Long v. Eastfield College, 88 F.3d 300, 305 & n. 4 (5th Cir.1996) (“[E]ven if a plaintiffs protected conduct is a substantial element in a defendant’s [adverse employment] decision ..., no liability for unlawful retaliation arises if [the same decision would have been made] even in the absence of the protected conduct.”).
Dr. Vadie argues that he was not selected for the position that became available in 1995 in retaliation for his having filed charges of discrimination and for filing this lawsuit. MSU asserts that Dr. Vadie was not selected in 1995 because he did not possess the requisite doctorate in chemical engineering, and that this legitimate, nondiscriminatory and non-retaliatory reason would have been applied even if Dr. Vadie had not filed his charges of discrimination or this lawsuit. Vadie responds that MSU changed the position requirements in 1995 solely to exclude him from consideration; in other words, he argues that MSU’s articulated reason for this non-selection is a mere pretext for retaliation.
From my review of this record, I am satisfied that there is no basis whatsoever for a finding of pretext as to the doctorate in chemical engineering requirement. The testimony from the members of the faculty selection committee is uncontradicted that this requirement was determined to be necessary by the faculty committee in order to replace the academic credentials of *380 the professor whose death created the vacancy in 1995, that this requirement was expressly stated in public notices about this opening, that this requirement was routinely applied to all applications for this 1995 vacancy, that the individuals selected by the faculty selection committee to be recommended to the Dean, of the Engineering School each satisfied this requirement of a doctorate in chemical engineering, and that Dr. Zappi who was ultimately selected by the Dean of Engineering did in fact have a doctorate in chemical engineering.
Vadie did not produce any testimony or record evidence upon which a jury could find that the requirement for a doctorate in chemical engineering was false or not truthful or was not in fact applied. Likewise, Vadie did not produce any evidence, either oral or documentary, that the faculty, selection committee that established the requirement of a doctorate in chemical engineering considered or talked about the facts that Vadie had filed a claim with the EEOC or had filed this lawsuit. Each of the members of the faculty selection committee testified that during the selection committee’s deliberations, no one talked about Vadie, nor about Vadie’s having filed an EEOC claim, nor about Vadie’s having filed this lawsuit. There is, in short, no evidence or testimony that contradicts in any way the evidence of the faculty selection committee as to the need for the doctorate in chemical engineering requirement and the absence of retaliatory actions insofar as Dr. Vadie’s application was concerned. As the majority notes in part II.B. of its opinion, “ ‘there must be a conflict in substantial evidence to create a jury question.’ ” Majority opinion at footnote 21 (quoting Boeing, 411 F.2d at 375). For the same reason that we disposed of Vadie’s national origin discrimination claim and concluded that such claim fits easily within the exceptions contemplated by both Rhodes and Reeves,[1]1 would conclude that his retaliation claims should also be denied.
Given the absence of a[1] substantial conflict as- to pretext or retaliation, I think the majority errs in relying ’upon inferences that might be drawn in order for a reasonable jury to reach a conclusion that the doctorate in chemical engineering requirement “was manufactured as a retaliatory means of eliminating [Vadie] from the field of applicants.” See Majority opinion, part II.B.2. The majority comes up with a laundry list of 17 items of evidence that it claims supports a conclusion in Dr. Vadie’s favor on the retaliation claim. The first eight items relate to events which occurred in 1993 and 1994, prior to the filing by Vadie of his EEOC charge in January 1995, and more critically revolve around the initiation by Vadie of a grievance under internal procedure of the University which he never identified as being a protected activity under Title VIL[2] I frankly disagree with the majority’s assertion that these events, all of which occurred before Vadie engaged in any protected activity, can nonetheless support a reasonable inference that MSU retaliated against Vadie because he later engaged in a protected activity.[3] The next four (9-12) of these 17 items simply recite the time frame in which certain events occurred and are absolutely neutral as to any inferences to be drawn therefrom. The remainder of these 17 items describe circumstances that have meaning insofar as retaliation is concerned only if you assume that the requirement of a doctorate in chemical engineering was a false one, or if you assume that a faculty *381 selection committee must have one and only one criteria for filling faculty vacancies which cannot be changed in light of the individual circumstances of each particular decision.
I must also register my dissent from the ultimate conclusion of the majority set forth on page 4380 of the Majority Opinion, that a jury could reasonably find that MSU “would have found that Dr. Vadie’s strengths greatly outweighed the technical lack of a chemical engineering degree and would have awarded him the 1995 position in the Chemical Engineering Department ‘but for’ his protected activity.” That conclusion is directly in conflict with the content of the April 22, 1994 letter from the faculty of the Chemical Engineering Department to the Dean of the Engineering School and with the November 17, 1994 letter from MSU’s Board to Vadie, both of which are described in the majority opinion. Both of these communications were sent prior to the date of Vadie’s first protected activity, i.e. Vadie’s January 1995 EEOC claim, and could not possibly reflect any retaliatory motive on the part of the faculty selection committee in late 1995. These communications indicate a decision on the part of the faculty that it did not want Dr. Vadie in the chemical engineering program and that his presence would be “highly counterproductive;” and a decision on the part of the Board that it unanimously supported the faculty decision. To conclude as the majority does that, if Dr. Vadie had not filed his EEOC claim or filed this lawsuit he would have been awarded the 1995 position, is just flatly contradicted by these letters; and no reasonable jury could reach such a conclusion on the basis of this record.
Simply put, I do not believe that Dr. Vadie has put forth sufficient evidence for the jury to use in rejecting MSU’s proffered legitimate, nón-discriminatory and non-retaliatory reason for not selecting Dr. Vadie for the 1995 .faculty position. See St. Mary’s Honor Ctr. v. Hicks, 509 U.S. 502, 507-508, 113 S.Ct. 2742, 125 L.Ed.2d 407 (1993); Texas Dep’t of Community Affairs v. Burdine, 450 U.S. 248, 256, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981).
Finally, I note that in this case, counsel for Vadie gave only a perfunctory discussion of the retaliation claim in his opening argument to the jury, and in his closing argument to the jury, counsel for Vadie did not discuss the elements of a retaliation claim nor did he comment on evidence and testimony which would support a finding on the retaliation claim. From my reading of this record, I am convinced that this case was tried on the basis of Vadie’s claims for racial or national origin discrimination and that the retaliation claim was an incidental, tag-along claim that counsel for Vadie never pressed either factually or legally. Likewise, I note that the district court, in its order denying MSU’s post-trial motions, did not even mention, let alone address, MSU’s contention that the jury’s verdict with respect to retaliation was unsupported by the evidence. Instead, the district court stated rather succinctly “the Court is of the opinion that a jury could reasonably conclude that Mississippi State University discriminated against the plaintiff based on his national origin or race.” Accordingly, I register my dissent from the rationale and reasoning utilized by the majority to breathe life into this unavailing retaliation claim.

Emotional Damages

Early on in its discussion of damages, the majority states:
Since we have overturned any verdict of discrimination, to withstand appeal, the $300,000 award must be able to be supported on the evidence of injury related to the retaliation claim alone.
If the majority had truly adhered to this statement, they would have concluded that the evidence of injury and damage resulting from the retaliation claim is totally absent. The majority recognizes that Va-die’s own testimony is the sole source of evidence on emotional injury and that emotional injury is the sole basis on which Vadie claims damages. The majority’s *382 quotation from Vadie s testimony is the sum total of all testimony on emotional injury and damages in this record. In my view, this case should be controlled by the opinion of this Court in Brady v. Fort Bend County, 145 F.3d 691 (5th Cir.1998), cert. denied, 525 U.S. 1105, 119 S.Ct. 873, 142 L.Ed.2d 774 (1999). In that case, the majority of the panel affirmed the district court’s decision eliminating jury awards for mental anguish damages ranging from $10,000 to $25,000. See id. at 717-720. In Brady, we established the test for reviewing an award of damages for mental anguish, when that award is based solely upon the plaintiffs own testimony. That test is:
Under Patterson, it does not matter what type of evidence is used to satisfy Carey’s specificity requirement, so long as that standard is successfully met. When a plaintiffs testimony is particularized and extensive, such that it speaks to the nature, extent, and duration of the claimed emotional harm in a manner that portrays a specific and discernable injury, then that testimony alone may be sufficient.
Id. at 720. In my view, Vadie’s testimony in this case is just like the testimony of the plaintiffs described in Brady, and we should, therefore, hold as we did in Brady:
In sum, the Plaintiffs testimony in this case is vague, conclusory, and uncorroborated. Under Carey, Patterson, and Price, it cannot legally support mental anguish damages.
Id. at 720.
Not only is Vadie’s damage testimony in this case insufficient under Carey, Patterson and Price, it clearly does not speak to any damages whatsoever arising from the retaliation claim. I note that the majority’s quote of Vadie’s testimony contains an ellipsis indicating omitted text. That omitted text reads as follows:
I worked for six years in the Mississippi State University and I worked very hard to get my tenure and during that time and even after that I rejected offers from oil industries because I wanted to be in Mississippi State University and I wanted a secure future. And that’s exactly what I did. But in 1992, 1993, when because of no fault of your’s they throw you out, they fire you, because of some — some problem with the department or whatever then obviously you see no future. Everything that you worked for for years and years and years totally destroyed.
In context, therefore, Vadie’s testimony about emotional damages relates to the decision of MSU to close down the Department of Petroleum Engineering in 1992 and 1998 and the decisions made in 1993 which resulted in Vadie not being hired on in the Chemical Engineering Department. There is no later testimony whatsoever by Vadie as to emotional injuries or damages resulting from his failure to be hired in 1995 as a replacement for the professor in the Chemical Engineering Department who died, nor is there any later testimony by Vadie as to his emotional injuries and damages relating to his claim of retaliation. Consequently, there is no evidence whatsoever to support any finding of emotional damages from his retaliation claim, and I respectfully dissent from the decision of the majority to remand for a new trial on retaliation damages unless Vadie accepts a remittitur in the amount of $290,000, reducing the damages award to $10,000. Likewise, I dissent from the gratuitous statement included in the majority’s opinion that perhaps Vadie can make a better record substantiating his claims of injury at a new trial. In my view, Vadie has already had his day in court, and his proof on both liability and damages in connection with his retaliation claim is not sufficient.
For all the foregoing reasons, I would reverse the judgment of the district court and render judgment that Vadie take nothing from MSU in this cause of action.

. See footnote 23 of Majority Opinion.

. The record is completely void of any evidence that Vadie's internal grievance was premised upon anything made unlawful by Title VII, and therefore does not support the inference that Vadie’s retaliation claim could be based on this conduct.

.Some retaliation cases have relied upon testimony indicating a prospective threat: i.e. "If' you want to keep your, job here you shouldn't file any claim with the EEOC over this incident.” No such testimony exists in this record.