IN THE UNITED STATES COURT OF APPEALS

FOR THE FIFTH CIRCUIT

_____

No. 99-20965
_____


DIANA LYN GAMBOA; LINDA D. SLUSSER,

Plaintiffs-Appellees,
Cross-Appellants,

versus

WILLIAM J. HENDERSON, U.S. Postmaster General,

Defendant-Appellant,
Cross-Appellee.

_____

Appeals from the United States District Court for
the Southern District of Texas
(USDC No. H-94-CV-1521)
_____

November 29, 2000

Before REAVLEY, BENAVIDES and DENNIS, Circuit Judges.

REAVLEY, Circuit Judge:[*]

In this Title VII retaliation case, plaintiff Diana Gamboa won a judgment against

the United States Postal Service (USPS).  The USPS challenges the award of damages.

_____

[*]Pursuant to 5TH CIR. R. 47.5, the Court has determined that this opinion should
not be published and is not precedent except under the limited circumstances set forth in
5TH CIR. R. 47.5.4.

We affirm the award of compensatory damages and reverse the award of front and back pay. Our different treatment of the awards of compensatory damages, decided by a jury, and front and back pay, decided by the district court, can largely be explained by our different standards of review.

BACKGROUND

Gamboa and Linda Slusser were postal employees who brought this action against the USPS, alleging sexual harassment and discrimination based on sex, age, disability, and race, as well as retaliation for pursuing discrimination claims. After a partial summary judgment, the case proceeded to trial only on Gamboa's and Slusser's Title VII retaliation claims. The USPS does not appeal the judgment in favor of Slusser, and the appeal is therefore limited to Gamboa.

Gamboa, who is deaf, was a clerk who had filed numerous equal employment opportunity (EEO) complaints on behalf of herself and others. Among other claims, Gamboa alleged that she was mistreated and ultimately terminated because of her participation in the EEO process. She claimed that she was terminated on the pretext of taking an unauthorized bathroom break.

DISCUSSION

A. Compensatory Damages

The USPS does not challenge the jury's liability finding that it retaliated against Gamboa in violation of Title VII, but does challenge the award of compensatory damages. The challenge is based on evidence introduced regarding Gamboa's

2

fibromyalgia.  "Compensatory damages" is a term of art under the civil rights laws, and by statute consist of damages for "future pecuniary losses, emotional pain, suffering, inconvenience, mental anguish, loss of enjoyment of life, and other nonpecuniary losses." 42 U.S.C. § 1981a(b)(3).  The plaintiff has a right to demand a jury trial on the issue of compensatory damages, see id. § 1981a(c), and the plaintiffs exercised that right in this case.  The jury was instructed that it could award compensatory damages for "emotional pain, suffering, or mental anguish that each Plaintiff experienced as a consequence of Defendant's unlawful conduct."  The jury awarded Gamboa $800,000 in compensatory damages.  After the trial, the district court reduced this award to $300,000 based on a statutory cap on such damages.  See id. § 1981a(b)(3)(D).

    1. Admission of Expert Testimony

    As to compensatory damages, the USPS first argues that the district court should not have admitted expert testimony on the cause of Gamboa's fibromyalgia.  Gamboa claimed that her mistreatment by the USPS had led to numerous ailments, including fibromyalgia, a condition we have described as "characterized by complaints of generalized pain, poor sleep, an inability to concentrate, and chronic fatigue."  Black v. Food Lion, Inc., 171 F.3d 308, 309 (5th Cir. 1999).  Gamboa claimed that the effects of her ailments included difficulty sleeping and bad dreams, easy bruising, fatigue, memory loss, and other maladies.  She testified that she was unable to work.

    Dr. Deborah Meyer, a family practitioner, testified as an expert.  She was Gamboa's treating physician.  Meyer opined that "it was [Gamboa's] activities at the post

3

office that brought on the symptoms" of fibromyalgia. The apparent basis of this conclusion was that Gamboa had suffered other stressful situations in her life such as divorce "without getting any symptoms of the fibromyalgia."

The USPS moved for new trial, arguing that Dr. Meyer's testimony as to the cause of Gamboa's fibromyalgia should not have been admitted, because it did not meet the requirements of Daubert v. Merrell Dow Pharms., Inc., 509 U.S. 579 (1993), and related authority, especially in light of the Black decision, cited above, which issued after the jury's verdict. The USPS did not object to Meyer's testimony prior to or during trial, and therefore concedes that appellate review is limited to plain error review. See Tompkins v. Cyr, 202 F.3d 770, 779 (5th Cir. 2000); Rushing v. Kansas City S. Ry. Co., 185 F.3d 496, 506 (5th Cir. 1999), cert. denied, 120 S. Ct. 1171 (2000). To prevail on plain error review, an appellant must show that (1) an error occurred, (2) the error is clear and obvious under current law, (3) the error affected the appellant's substantial rights, and (4) the error would seriously affect the fairness, integrity, or public reputation of judicial proceedings if left uncorrected. See id.

We cannot say that the district court's admission of the expert testimony rises to the level of plain error. Even though, as we discuss further below, Meyer's causation testimony was highly tenuous, and assuming that the first three requirement for plain error correction are met, we are not persuaded that the error would seriously affect the fairness, integrity, or public reputation of judicial proceedings if left uncorrected. Correcting the erroneous admission of the expert testimony in these circumstances would

4

itself call into doubt the fairness, integrity, or public reputation of judicial proceedings. Meyer was duly disclosed as an expert witness during pretrial discovery, and the USPS had an opportunity to depose her if it chose. The procedure for challenging an expert witness under Daubert through a pretrial hearing is now well established, see, e.g., United States v. Katz, 178 F.3d 368, 370 (5th Cir. 1999), yet the USPS failed to take advantage of this procedure. Furthermore, to accept its argument would in effect mean that the district court should have sua sponte excluded Meyer's testimony on causation. A Daubert analysis of the admissibility of expert testimony is a complex undertaking, involving the consideration of several factors, and does not lend itself to instant, sua sponte rulings from the bench. For this reason pretrial procedures are employed for consideration of Daubert objections.

In addition, Gamboa argues that the USPS deliberately chose not to object to Meyer's testimony. As we understand Gamboa's argument, the USPS had no quarrel with Meyer's testimony that Gamboa suffered from fibromyalgia, and was hoping that the jury would either conclude that (1) Gamboa's claimed damages were exaggerated, or (2) Gamboa does indeed suffer from fibromyalgia, but the USPS did not cause this condition. As to the latter point, we note that the USPS does not argue on appeal that Gamboa failed to prove that she suffers from fibromyalgia, but only challenges the proof of causation. We further note that during closing argument, counsel for the USPS made an argument that seems consistent with Gamboa's suspicions:

5

> I didn't hear any evidence connecting [Gamboa's] present physical condition to the Postal Service. Now, I'll be honest with you. I'm 47 years old. I've got aches and pains, too. In five years, when I'm 52, I'll bet you I'll have more than I do now. I submit to you that the logical conclusion of what we heard from the witness stand is Ms. Gamboa is attempting to lump all her aches and pains that she's accumulated over the course of years and that she will accumulate as she gets older, as we all will, into a little basket that she wants to lay at the foot of the Postal Service and she wants you guys to give her a nice little nest egg.

We are not completely convinced that Gamboa is correct in arguing that the USPS made a tactical decision not to object to Meyer's testimony, but appearances are such that we are satisfied that the USPS has not shown that a failure to correct the alleged error in admitting Meyer's causation testimony would seriously affect the fairness, integrity, or public reputation of judicial proceedings.

2. Sufficiency of Evidence

As to the award of compensatory damages, the USPS alternatively argues that even if the district court did not err in admitting the expert testimony, the evidence was insufficient to establish that Gamboa's fibromyalgia was caused by the retaliation she suffered. As discussed above, the USPS does not challenge the proof that Gamboa in fact suffered from fibromyalgia, but does question the proof that its conduct caused Gamboa to suffer from this medical condition. The USPS also argues that even if the expert's testimony were admissible, she only testified that Gamboa's fibromyalgia was caused by "her activities at the post office." When asked to describe the conditions at the post office more specifically, she stated: "The conflicts with the supervisors, an altercation with the co-worker and the termination, as far as I know." The USPS argues that

6

Gamboa did not prove that the fibromyalgia was caused by the unlawful retaliation, in that even if the expert's opinion is accepted as entirely valid, other legal activities at the post office might have caused the fibromyalgia. The USPS argues that many of Gamboa's conflicts at the post office were not related to her retaliation claim. In particular, the district court held prior to trial that the altercation with the co-worker, known as the "wrist-grabbing incident," was not actionable retaliation and granted summary judgment on this claim. According to the USPS, "Gamboa herself attributed her disability to the wrist-grabbing incident, which the court ruled was not a Title VII violation."

The USPS is arguing that the evidence is insufficient to sustain the jury's finding that the unlawful retaliatory conduct of the USPS caused Gamboa's nonpecuniary damages. The USPS, however, failed to move for judgment as a matter of law at the close of all the evidence under Fed. R. Civ. P. 50(a), on grounds of insufficient evidence of causation or any other ground. We have held that a party must move for judgment as a matter of law at the close of all the evidence to preserve error, and that a failure to do so results in a waiver of appellate review of the sufficiency of the evidence, see McAnn v. Texas City Refining, Inc., 984 F.2d 667, 671 (5th Cir. 1993), or limits appellate review to "whether the plaintiff has presented any evidence in support of his claim," see Polanco v. City of Austin, 78 F.3d 968, 974 (5th Cir. 1996). Under a "no evidence" standard of review, the sufficiency argument must fail, since Gamboa offered some evidence of causation.

7

B.    Back Pay and Front Pay

The USPS also challenges the award of front pay and back pay.  Unlike an award of compensatory damages, awards of front and back pay under Title VII are decided by the district court.  See Allison v. Citgo Petroleum Corp., 151 F.3d 402, 423 n.19 (5th Cir. 1998).  As explained above, our review of the award of compensatory damages is either nonexistent or extremely limited to a no evidence standard of review, because the USPS failed to move for judgment as a matter of law at the close of all the evidence.  However, we review the district court's decision to award front and back pay for abuse of discretion.  See Shirley v. Chrysler First, Inc., 970 F.2d 39, 44 (5th Cir. 1992) ("We review an award of front pay for an abuse of discretion."); Sellers v. Delgado Cmty. Coll., 839 F.2d 1132, 1136 (5th Cir. 1988) (noting that "back pay is not an automatic remedy, but is equitable in nature and may be invoked in the sound discretion of the district court.").   "A district court abuses its discretion if it bases its decision on an erroneous view of the law or on a clearly erroneous assessment of the evidence."  Esmark Apparel, Inc. v. James, 10 F.3d 1156, 1163 (5th Cir. 1994).

The district court awarded back pay of about $265,000 and front pay of about $323,000.  In so doing, the court stated that it found the conclusion of Gamboa and Meyer that the fibromyalgia was caused by the USPS's retaliatory acts to be "extremely speculative and troubling."  The court, however, concluded that back pay was appropriate because the USPS "failed to carry its burden."  In context, the court was referring to the

8

USPS's failure to prove that Gamboa had not mitigated her damages, and its failure to offer its own expert to rebut Dr. Meyer.

We conclude that the district court erred in awarding front and back pay. First, as a legal matter, we do not agree with the district court that the burden was on the USPS to prove that Gamboa was not entitled to back pay. Front and back pay compensate a plaintiff for wages and other benefits she would have earned if she had continued to work. See Shirley, 970 F.2d at 44 ("Front pay is awarded to compensate the plaintiff for lost future wages and benefits."); Franks v. Bowman Trans. Co., 495 F.2d 398, 421 (5th Cir. 1974) ("Where the discriminatee has suffered economic injury in the form of lost wages, back pay is normally appropriate relief."). For this reason, such damages strike us as inappropriate if the plaintiff claims that she is unable to work because she is disabled. See Saulpaugh v. Monroe Cmty. Hosp., 4 F.3d 134, 145 (2d Cir. 1993) (denying award of back pay for period during which plaintiff was disabled). Gamboa's position is that she was unable to work after leaving her employment with the USPS. She and Dr. Meyer testified that she is totally and permanently disabled.

Gamboa argues, however, that an exception to this rule holds that a plaintiff may recover back and front pay damages if she becomes disabled as a result of the defendant's wrongful conduct. See Gotthardt v. Nat'l R.R. Passenger Corp., 191 F.3d 1148, 1155-56 (9th Cir. 1999) (holding that award of front pay was appropriate where plaintiff proved that defendant's wrongful conduct caused her disability). Assuming that Gamboa is correct, we nevertheless believe that in such circumstances the burden should be on the

9

plaintiff to prove that the defendant caused her disability. Placing the burden on the plaintiff is consistent with the general principle that a plaintiff in a civil case bears the burden of proving her damages, and our recognition in the Title VII context that "only those individuals who have suffered a loss of pay because of the illegal discrimination are entitled to [back pay] compensation," Shipes v. Trinity Indus., 987 F.2d 311, 318 (5th Cir. 1993), and that back pay is available "to make persons whole for injuries suffered on account of unlawful employment discrimination," Floca v. Homcare Health Servs, Inc., 845 F.2d 108, 111 (5th Cir. 1988). While we have recognized that the burden of proving a failure to mitigate damages by finding substantially equivalent work rests on the defendant, see Sellers v. Delgado Coll., 902 F.2d 1189, 1193 (5th Cir. 1990), we have never held that when a plaintiff seeks front and back pay on the theory that she is disabled as a result of the defendant's conduct, the plaintiff is not obliged to prove up this theory by establishing that the defendant's violation of Title VII caused her disability. The better rule, we think, is to place the burden on the plaintiff to prove such a claim. The district court therefore legally erred in placing the burden on the USPS to prove that Gamboa was not entitled to back pay.

We are further of the view that the district court clearly erred, as a factual matter, in finding that Gamboa was entitled to front and back pay. These awards hinged on Gamboa's theory that, even though she was disabled, she was entitled to front and back pay because the USPS had caused her disability through its unlawful conduct, by causing her fibromyalgia.

10

"A finding is 'clearly erroneous' when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed."  United States v. United States Gypsum Co., 333 U.S. 364, 395 (1948); see also Henderson v. Belknap (In re Henderson), 18 F.3d 1305, 1307 (5th Cir. 1994).  With respect to the district court's award of front and back pay, we are left with a definite and firm conviction that Gamboa did not carry her burden of showing that the USPS caused her fibromyalgia.

Gamboa's proof of causation consisted of the testimony of Dr. Meyer.  Meyer is not a specialist in chronic pain-related illnesses such fibromyalgia, but had treated about two dozen fibromyalgia patients.  Meyer testified that she diagnosed Gamboa as suffering from fibromyalgia based on Gamboa's verbal description of her symptoms.  Meyer explained that there is no objective diagnostic test for the disease:  "You can't test for fibromyalgia.  There is no test that will say that this patient has fibromyalgia because all of the tests come back negative."

Dr. Meyer admitted that medical science does not know the pathology of fibromyalgia, and the only text she relied on that she could identify, a "Primer on Rheumatic Disease" published by the Arthritis Foundation, states that the etiology of the disease is unknown.  Meyer nevertheless opined that Gamboa's "activities at the post office" had caused her fibromyalgia.  She based this conclusion on the fact that Gamboa had been able to handle other stressful situations in her past such as her divorce without manifesting symptoms of fibromyalgia.  Meyer did little more than assume that since the

11

onset of the disease followed the defendant's conduct, the defendant's conduct caused the disease. Given Meyer's lack of expertise, the vagueness of her testimony, and the lack of a consensus in the medical community regarding the cause of fibromyalgia, we conclude that Gamboa did not establish her entitlement to front and back pay.

Gamboa argues that her proof was not based solely on the expert's testimony, but also on her own testimony and that of her husband. While Gamboa and her husband testified that Gamboa had fibromyalgia or symptoms of that disease, it was Meyer, the expert, who offered medical causation testimony that the conduct of the USPS caused the disease. If, for the reasons discussed above, Dr. Meyer was unable to establish medical causation, the lay testimony of Gamboa and her husband cannot in our view remedy this failure of proof.

Summarizing, we affirm the jury verdict because we cannot say that the plaintiff failed to present "any evidence" in support of her claim of compensatory damages, but we reverse the front and back pay awards because the district court committed an error of law and a clearly erroneous assessment of the evidence. Because the district court misplaced the burden of proof and conceded that its finding of causation was extremely speculative and troubling, and although there is some evidence to support a finding that the USPS's unlawful retaliation caused Gamboa's disability, on the entire record we are left with a definite and firm conviction that the district court committed a mistake in awarding front and back pay.

B.     Cross-Appeal

By way of what she characterizes as a protective cross-appeal, Gamboa argues that the district court erred in granting summary judgment on her "retaliatory harassment" claims. Gamboa does not fully explain the nature of these claims, but apparently urged below that a pattern of harassing behavior in retaliation for making a Title VII complaint can amount to a constructive discharge or other adverse employment action actionable under Title VII, a theory recognized by some courts. We see no need to address this argument. The USPS has not appealed the jury's liability finding of retaliation. It has only appealed the damages awarded for retaliation. Gamboa does not demonstrate that her damages would be different under a retaliatory harassment theory. More specifically, Gamboa does not suggest how her theory of retaliatory harassment should alter our conclusions that her award of compensatory damages should stand, but her award of front and back pay should not.

## CONCLUSION

For the foregoing reasons, the judgment is modified to exclude the awards of front pay and back pay to Gamboa and interest thereon.

Judgment Affirmed as Modified.