# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

August 19, 2010

No. 09-30857
Summary Calendar

Lyle W. Cayce
Clerk

LIONEL H. IRONS; SETH MARTIN,

Plaintiffs - Appellants

v.

AIRCRAFT SERVICE INTERNATIONAL, INC., doing business as Aircraft Service International Group,

Defendant - Appellee

Appeal from the United States District Court
for the Eastern District of Louisiana
USDC No. 2:07-CV-9539

Before KING, STEWART, and HAYNES, Circuit Judges.

PER CURIAM:[*]

Appellants Lionel Irons ("Irons") and Seth Martin ("Martin") appeal the district court's grant of summary judgment on their racial discrimination and retaliation claims against their former employer, appellee Aircraft Service International Group ("ASIG"). Appellants also raise several issues related to various evidentiary rulings and the jury's ultimate verdict in the subsequent

---

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

No. 09-30857

trial addressing their hostile work environment claim.  Additionally, ASIG has filed a motion to strike portions of appellants' briefing, and appellants' have filed a motion to strike portions of ASIG's motion.  We AFFIRM the judgment of the district court, GRANT ASIG's motion to strike, and DENY appellants' motion to strike and motion to file a supplemental brief.

## I.  FACTUAL & PROCEDURAL BACKGROUND

ASIG provides commercial aviation services to major airlines and airports, including fueling, ramp service, cargo handling, and fuel facility maintenance. Appellants, both African-Americans, claim that while employed with ASIG, they were discriminated against on the basis of race, were subjected to racial harassment, and were retaliated against in violation of Title VII of the Civil Rights Act, 42 U.S.C. § 1981, and the Louisiana Employment Discrimination Law.  Martin and Irons were both employed by ASIG at New Orleans International Airport.  Martin was employed as a fuelman.  His duties included fueling aircraft operated by commercial carriers.  Irons was employed as a fuel farm operator and was promoted to lead fuel farm agent.  In this role, Irons was responsible for all of the incoming and outgoing fuel at the airport.

A.  The Bonus

Both Martin and Irons state that they reported for work in the wake of Hurricane Katrina to assist in any way they could.  Both Martin and Irons also testified in their depositions that they spent their time after Katrina assisting with fueling operations for Signature Flights ("Signature").  Signature, a separate, "sister" company of ASIG owned by the same parent corporation, provides aviation services to corporate and other private clients.  Appellants testified that several white individuals employed by Signature received bonuses for their post-storm efforts, but they, as ASIG employees, did not.[1]  Martin states

---

[1] In their appellate briefing, appellants contend that they offered evidence that two ASIG employees received bonuses after the storm.  For Martin, appellants cite his deposition

2

No. 09-30857

he complained to Ronald Crouch ("Crouch") about ASIG's failure to give him a bonus for his post-Katrina efforts.[2]  Martin also states that he contacted Alton Adams ("Adams"), ASIG's general manager, about the bonus issue.  Irons testified that he contacted various members of ASIG's management personnel including Crouch, Adams, Landry Mathieu ("Mathieu"), and Terry Woodward ("Woodward") about the bonus but did not receive a satisfactory explanation other than that ASIG did not give bonuses for the post-Katrina work of its employees.[3]

B.  The Promotions

Both Martin and Irons allege they were required to complete extra administrative steps to receive promotions. Irons claims he was required to prepare a letter of interest before being considered for a promotion to lead fuel agent.  After writing the letter, Irons was promoted.  Irons testified that several white employees in other departments were not required to write similar letters to receive promotions.  Martin also alleges he was unfairly required to prepare a letter of interest before being designated a temporary lead fuel agent.  Martin prepared the letter as requested and was given the temporary promotion.

---

as competent summary judgment evidence of this fact.  Yet when asked "[d]o you know of any ASIG employee . . . who received a bonus [for working after Katrina]?" in the cited testimony, Martin responded, "To the best of my knowledge, I can't answer that question.  To the best of my knowledge, I don't know."

Appellants' brief directs the court to Irons's deposition testimony as well.  But when asked if he was aware of any ASIG employees receiving a bonus, Irons testified, "Not ASIG." Appellants have failed to direct the court to any other summary judgment evidence establishing or even supporting an inference that the two ASIG employees mentioned by name in the briefing received Katrina-related bonuses from ASIG.

[2] Appellants cite no record evidence suggesting Martin told Crouch that he felt the bonus was withheld for racial reasons.

[3] Appellants cite no record evidence suggesting Irons told Crouch, Adams, Woodward, or Mathieu that he felt the bonus was withheld for racial reasons.

Martin also alleges he was passed over for two permanent promotions during his time at ASIG on account of his race. He claims he was never given the opportunity to compete for a position as operations manager or for a position as training manager. Martin testified that the operations manager position would have constituted a three-level promotion above his then-current position and the training manager promotion would have constituted a two-level promotion. Martin conceded that he never asked or inquired about the possibility of either promotion.

C. The Terminations

   1. Martin

In July 2006, Dale Cancienne ("Cancienne"), an employee of United Airlines ("United"), claims he saw Martin prefueling an airplane in violation of company policy. Cancienne approached Martin, who denied prefueling the plane; Martin contends he had only hooked up the fuel hose to prepare to fuel the plane. Cancienne reported the incident to Don Hardison, United's general manager, who contacted Crouch. Crouch asked Martin's supervisor, Mathieu, to look into the matter, and Mathieu counseled Martin regarding prefueling a short time later. As part of that counseling, Mathieu reviewed United's fueling procedure with Martin. The next day, Cancienne again reported he saw Martin prefueling an airplane. Martin claims Cancienne confronted him and said, "You people don't know what you're doing." Cancienne reported the second incident to ASIG, and Hardison sent a letter to Crouch requesting that Martin not be allowed to fuel United planes. As a result, Crouch terminated Martin on July 20, 2006. ASIG informed Martin that he was terminated for violating fueling procedures.

   2. Irons

As a fuel farm operator, Irons was responsible for monitoring incoming and outgoing fuel. Irons testified that he had been trained on how to perform

these tasks at the outset of his employment. On August 8, 2002, Irons was suspended without pay for three days because he failed to follow fueling procedures by leaving the premises during an ongoing pipeline operation. From May 2002 to June 2005, Irons received three additional written warnings. On November 9, 2006, Irons received another write-up—this time for failing to properly maintain records. Approximately one month later, Irons was suspended for two days for failing to conduct a pipeline test. At that time, Irons was warned that further failures to adhere to ASIG policy would result in his termination. Finally, a memorandum describing Irons failure to follow daily close-out procedures was added to his file on March 5, 2007.

In September 2007, Irons was involved in a fuel spill. The gauges and emergency shut off for the fuel tank had not been working for some time. ASIG found after an investigation that Irons did not follow proper fueling procedures and was responsible for the spill. Irons admitted during the investigation that he got "sidetracked," left the area to go to the bathroom, fill out paperwork, and make phone calls—all in violation of ASIG policy. Crouch and Mathieu investigated the cause of the spill, and, after consulting with Teresa Hoien, ASIG's Human Resources representative, Crouch discharged Irons on September 24, 2007, for ignoring ASIG's safety policies.

D. The Noose Incident

At trial, Martin and Irons testified that they saw a noose hung around a chocolate milk bottle near a fuel rack at the ASIG facility. They testified that they, together with ASIG union representative Myron Roberts ("Roberts"), observed the noose on a weekend sometime between December 2005 and January 2006. ASIG presented evidence demonstrating that Irons, Martin, and Roberts had not worked together on a weekend during that period. Roberts then testified that the noose incident occurred in September 2005.

No. 09-30857

Appellants testified they brought the noose incident to the attention of ASIG management. All of the individuals they allegedly informed testified that they were never told about the noose.

E.  The EEOC Charges

Martin initiated an EEOC charge of discrimination and retaliation on July 11, 2006. His EEOC charge was formally filed on October 4, 2006. In his deposition, Martin could not recall if he told any ASIG manager that he had filed an EEOC charge.[4]

Irons also initiated an EEOC charge of discrimination and retaliation on July 11, 2006. His EEOC charge was formally filed on September 12, 2006. Irons testified that he did not bring the EEOC charge to the attention of anyone in management.

F.  Proceedings in the District Court

On December 17, 2007, Martin and Irons brought suit alleging claims of discrimination on the basis of race, racial harassment, and retaliation in violation of Title VII of the Civil Rights Act, 42 U.S.C. § 1981, and the Louisiana Employment Discrimination Law. ASIG moved for summary judgment on all claims. On August 12, 2009, the district court granted summary judgment in favor of ASIG on appellants' disparate treatment and retaliation claims. The district court denied ASIG's motion on appellants' hostile work environment claim.

The hostile work environment claim proceeded to a jury trial. During voir dire, appellants raised a *Batson* challenge with respect to ASIG's use of peremptory strikes to remove Juror 1 and Juror 5, both African-American

---

[4] In their appellate briefing, appellants contend Martin "brought his E.E.O.C. charge to Adams attention," but do not provide any citation to record evidence in support of that proposition. The record cite they do provide references Martin's deposition testimony stating that he did not recall if he told anyone at ASIG about the EEOC charge.

individuals.  Counsel for ASIG offered justifications for the exercise of both strikes.  First, ASIG's counsel explained that Juror 5 was struck because counsel thought he saw a connection or smile between the juror and one of the appellants.  Second, he explained that he struck Juror 1 because she appeared disinterested and he was concerned she would be inattentive.  Appellants' counsel did not challenge the reasons given or offer other evidence suggesting the reasons were pretextual.  The district court stated that it agreed that Juror 1 seemed disinterested and that it had observed a "discomforting personal connection" between Juror 5 and one of the appellants.  Accordingly, the district court denied both *Batson* challenges.

After a two-day trial, the jury returned a verdict for ASIG on appellants' hostile work environment claim.  The district court entered judgment the next day.  Appellants timely appealed.

## II.  DISCUSSION

Appellants appeal: 1) the district court's grant of summary judgment on their race-based discrimination and retaliation claims; 2) several alleged evidentiary errors in the trial on their hostile work environment claims; 3) the district court's denial of their *Batson* challenge as to two African-American jurors; and 4) the jury's verdict on their hostile work environment claim.[5]

A.  The District Court's Grant of Summary Judgment

---

[5] Following the close of briefing, ASIG moved to strike several portions of appellants' briefs.  Specifically, ASIG moved to strike: 1) all reference to a mixed motive theory of discrimination; 2) all assertions that ASIG's failure to give Irons a pay raise constituted a retaliatory action; 3) all allegations that Martin was passed over for a promotion to temporary lead position on "several" occasions; and 4) all allegations that Martin was denied a promotion to permanent lead position.  We grant ASIG's motion as none of these claims were presented in the district court. *Horton v. Bank One, N.A.*, 387 F.3d 426, 435 (5th Cir. 2004) (arguments not raised in the district court are waived).

Appellants, in response to ASIG's motion, moved to strike a portion of ASIG's motion to strike.  That motion is denied.  We also deny appellants' untimely "Motion for Leave to File Supplemental Brief," filed August 1, 2010.

No. 09-30857

Appellants' first appeal the district court's grant of summary judgment on their race-based discrimination and retaliation claims in favor of ASIG. A grant of summary judgment is reviewed de novo, applying the same standard as the district court. *Bolton v. City of Dallas*, 472 F.3d 261, 263 (5th Cir. 2006). Our inquiry "is limited to the summary judgment record before the trial court." *Martco Ltd. P'ship v. Wellons, Inc.*, 588 F.3d 864, 871 (5th Cir. 2009) (internal quotation marks omitted). We view the evidence in the light most favorable to the non-moving party, *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986), and the movant has the burden of showing this court that summary judgment is appropriate, *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Summary judgment is appropriate where the competent summary judgment evidence demonstrates that there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. *Bolton*, 472 F.3d at 263; *see* Fed. R. Civ. P. 56(c). A genuine issue of material fact exists if a reasonable jury could enter a verdict for the non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986).

1. Race-based Discrimination

Appellants contend that the district court erred in granting ASIG's motion for summary judgment on their race-based discrimination claims related to the post-Katrina bonus payments, ASIG's letter-writing promotion requirements, ASIG's failure to promote Martin to operations manager or training manager, and each of their discharges. To establish a prima facie case of employment discrimination, appellants were required to show by a preponderance of the evidence that: (1) they are members of a protected class; (2) they were qualified for their positions; (3) they were subjected to an adverse employment action; and (4) they were treated less favorably than similarly situated employees. *Bryan v. McKinsey & Co., Inc.*, 375 F.3d 358, 360 (5th Cir. 2004). The parties do not dispute whether Martin and Irons were members of a protected class or whether

8

they were qualified for the positions they occupied at ASIG (although the parties do dispute Martin's qualification for the positions to which he sought promotion, as noted below). As such, our analysis with respect to each claim is focused primarily on the third and fourth elements of the prima facie case.

### i. Bonus

No ASIG employee received a bonus from ASIG for their post-Katrina efforts at the New Orleans airport. All of the evidence in the record states that bonuses were paid exclusively to Signature's employees. Martin testified he did not know whether any ASIG employees received a bonus for post-Katrina work, and Irons affirmatively stated that only Signature employees received such a bonus. Crouch received a bonus, but he was a Signature employee at the time Katrina struck New Orleans, and he received his bonus from Signature. Similarly, appellants argue that Joseph Giarratano ("Giarratano"), ASIG's former training manager, received a storm bonus. The record evidence cited by appellants merely states that Giarrantano received "a bonus." Other uncontroverted record evidence reveals that Giarratano's bonus was paid by ASIG as a reward for overall safety performance at the facility rather than any storm-related work. Consequently, appellants have failed to raise a genuine issue of material fact as to whether similarly situated *ASIG employees* were treated more favorably *by ASIG*. As such, summary judgment was appropriate on appellants' bonus claims.

### ii. The Letter-Writing Requirement

Appellants both contend that ASIG discriminated against them on the basis of their race by requiring them to prepare letters of interest before promoting them to new positions. Irons was required to prepare a letter before being promoted to lead fuel farm operator. Martin was required to prepare a letter before being promoted to temporary lead fueler. Both Martin and Irons received the requested promotions upon tendering the required letter.

No. 09-30857

As the district court found below, appellants' claims flowing from ASIG's letter-writing requirement fail because requiring an employee to undertake such a task does not constitute an adverse employment action. "[A]n employment action that 'does not affect job duties, compensation, or benefits' is not an adverse employment action." *Pegram v. Honeywell, Inc.*, 361 F.3d 272, 282 (5th Cir. 2004) (quoting *Banks v. E. Baton Rouge Parish Sch. Bd.*, 320 F.3d 570, 575 (5th Cir. 2003)). As such, we find the district court did not err when it granted summary judgment on appellants' claims related to the letter-writing requirement.

### iii. Martin's Promotions Claims

In addition to the letter-writing claim, Martin also alleges ASIG discriminated against him on the basis of race when it failed to promote him to training manager or operations manager. Even assuming Martin was qualified for these positions[6], Martin concedes that he never expressed interest in either position to anyone at ASIG. Failure to apply for a disputed promotion will bar a "failure to promote" claim absent a showing that such an application would have been a futile gesture. *Shackelford v. DeLoitte & Touche, LLP*, 190 F.3d 398, 406 (5th Cir. 1999); *see also Grice v. FMC Techs. Inc.*, 216 F. App'x 401, 406 (5th Cir. 2007) (unpublished) (finding no prima facie showing of "failure to promote" where employee failed to apply for the promotion at issue). The "futile

---

[6] Martin's qualifications for either position are dubious based upon the available record evidence. Martin does not dispute that the operations manager position would have constituted a three-level promotion above his then-current position and the training manager promotion would have constituted a two-level promotion. Moreover, the district court found that Martin failed to dispute that he was unqualified for either position, and Martin has offered nothing meaningful on appeal to suggest he was qualified. Consequently, it is doubtful that Martin has carried his prima facie burden of demonstrating that he was qualified for a promotion he did not receive. *Davis v. Dallas Area Rapid Transit*, 383 F.3d 309, 317 (5th Cir. 2004) (plaintiff must show she applied for a position for which she was qualified as part of the prima face case). Nonetheless, we do not reach this issue as Martin's failure to apply for either job defeats his claim.

10

gesture" exception will only apply where "the applicant for the promotion was deterred by a known and consistently enforced policy of discrimination." *Shackelford*, 190 F.3d at 406. Martin argues his claim survives under the "futile gesture" exception. Specifically, he argues that "he was not given the opportunity to apply because ASIG approached who they wanted for the positions and filled them." This allegation, without more, does not suggest "a known and consistently enforced policy of discrimination" in ASIG's promotion system. As such, Martin's failure to apply is fatal to his promotion-related discrimination claims.

### iv. Discharge

Both appellants allege that they were discharged whereas similarly situated white employees were not subject to similar punishment for similar infractions. Even assuming Martin and Irons can make out a prima facie case[7], they have failed to create a genuine issue of material fact as to ASIG's proffered reasons for termination. *See Mayberry v. Vought Aircraft Co.*, 55 F.3d 1086, 1090 (5th Cir. 1995) ("[I]f the defendant has offered a legitimate nondiscriminatory reason for its action, the presumption of discrimination derived from the plaintiff's prima facie case simply drops out of the picture . . . ." (internal quotation marks omitted)). To meet their burden, appellants were required to present evidence showing either intentional discrimination or the falsity of the employer's explanation. *Bryan*, 375 F.3d at 360. Importantly, "[t]he question is not whether an employer made an erroneous decision; it is

---

[7] Again, appellants' appear unable to make out a prima facie case under the facts presented on this record. As part of their prima facie showing, appellants were required to show either: (1) they were replaced by an individual outside their protected class; or (2) other similarly situated employees were treated more favorably. *Bryan*, 375 F.3d at 360. Both Martin and Irons were replaced by African-Americans. Additionally, as the district court explained in detail below, appellants have not shown disparate treatment because they have not adduced any evidence showing that white employees were not reprimanded or discharged for engaging in "essentially identical" conduct. *See Barnes v. Yellow Freight Sys., Inc.*, 778 F.2d 1096, 1101 (5th Cir. 1985).

whether the decision was made with discriminatory motive." *Mayberry*, 55 F.3d at 1091.

ASIG claims it terminated Martin for violating fueling procedures by prefueling United aircraft on two occasions. Martin vociferously contests the conclusion that he was in fact prefueling either plane. Yet he offers no competent summary judgement evidence creating an issue of material fact on the question of whether ASIG *believed* he had prefueled the planes and terminated him upon that honestly held belief after receiving two complaints from a customer. Accordingly, the district court correctly granted summary judgment on Martin's disparate impact discharge claim.

Similarly, Irons has offered no evidence suggesting ASIG's stated reasons for terminating him were pretextual. ASIG asserts that it terminated Irons for causing a major fuel spill by failing to properly perform his job duties. Irons admits that he was previously cited by ASIG for leaving the fueling area during fueling operations. Irons admits he got "sidetracked" and left the area again during fueling operations on the day of the spill. Irons has not directed the court to any record evidence suggesting or supporting an inference that ASIG fired him for any reason other than his role in the fuel spill incident. As such, the district court did not err in granting summary judgment on Irons's disparate impact discharge claim.

2. Retaliation

In addition to raising disparate impact claims, Martin and Irons also alleged that their terminations were retaliatory.[8] Like the district court, we assume for the sake of argument that appellants have established a prima facie case of retaliatory termination and turn to ASIG's proffered reasons. As to

---

[8] Like the district court, we find that appellants' other retaliation claims were abandoned in the court below. Accordingly, we restrict our analysis to retaliatory termination as the only remaining claim.

No. 09-30857

Martin, ASIG pointed to his violations of fueling procedures as the grounds for his termination. The uncontroverted evidence demonstrates that ASIG received a report from a customer that Martin was prefueling planes, required Martin to be immediately counseled and retrained by his supervisor, and received a second report that Martin was prefueling planes again the very next day coupled with a demand from the customer that Martin not fuel its airplanes. Though Martin again disputes whether he was prefueling the aircraft in question, Martin has failed to adduce any evidence supporting an inference that ASIG's proffered justification was pretextual for the reasons set forth in detail above. Accordingly, the district court properly granted summary judgment.

Similarly, Irons has failed to offer any evidence suggesting ASIG's stated reasons for terminating him were pretextual. ASIG claims it fired Irons for causing a major fuel spill. Irons has not disputed that he was responsible for the fueling operation that produced the spill, that he was away from the fueling area at the time of the spill, and that he had been previously disciplined for a similar infraction. Irons asserts that several write-ups he received after filing his EEOC charge were fabricated, and, as a result, he has created a fact issue on pretext regarding the reasons for his termination. First, his reliance on our decision in *Shirley v. Chrysler First, Inc.*, 970 F.2d 39 (5th Cir. 1992), is misplaced. Unlike the plaintiff in *Shirley*, Irons was not suddenly subject to complaints about his work performance only after engaging in protected activity. *Id.* at 42. The record is replete with instances of formal discipline spanning Irons's time at ASIG. Moreover, even if the write-ups at issue were the first Irons had received, his argument is unavailing as he has adduced no evidence disputing the grounds upon which he was disciplined after engaging in protected activity. *See Newsome v. Collin County Cmty. College Dist.*, 189 F. App'x 353, 356 (5th Cir.

13

2006) (unpublished)[9] (deeming claims of false write-ups insufficient to create a genuine issue of material fact where party "did not introduce evidence to rebut any of the incidents for which she received a written warning"). Accordingly, the district court properly granted summary judgment on Irons's retaliation claims.

B. Alleged Jury Trial Errors

1. Evidentiary Claims

Appellants raise three claims of error based on evidentiary rulings made by the district court during the trial on their hostile work environment claim. We review a district court's evidentiary rulings for abuse of discretion. *Alaniz v. Zamora-Quezada*, 591 F.3d 761, 774 (5th Cir. 2009). We address each claimed error in turn.

i. Admission of ASIG's Time Record Summaries

Appellants first contend the district court erred when it admitted two summaries of ASIG's employee time records into evidence. The summaries were prepared from time records also admitted as evidence during the course of the trial.[10] They were offered in response to Irons's testimony that he observed the noose on a weekend between December 2005 and January 2006 while working with Martin and Roberts. ASIG submitted the summaries in conjunction with the time records as impeachment evidence to show that Martin, Irons, and Roberts had never worked together on a weekend during that time period. Appellants have identified no discrepancy between the original records and the data included in the summary. Accordingly, the district court's decision to admit

---

[9] Although an unpublished decision is not precedent, it is cited for its factual similarity and persuasive reasoning.

[10] Though mentioned in passing in the opening brief by exhibit number, appellants make no arguments regarding the district court's admission of the underlying time record reports. Accordingly, any arguments regarding the admissibility of the underlying records themselves have been waived. *Askanase v. Fatjo*, 130 F.3d 657, 668 (5th Cir. 1997) ("All issues not briefed are waived.")

the summaries fell within its broad discretion under Federal Rule of Evidence 1006, see *Donovan v. Janitorial Servs., Inc.*, 672 F.2d 528, 531 (5th Cir. 1982) (admission of summaries proper where appellant failed to identify any discrepancy between original records admitted into evidence and the representation of that data in the disputed summaries),[11] and, in any event, would be harmless error.

### ii. Exclusion of Appellants' Audio Tape

Next, appellants contend the district court erred when it excluded a CD containing five tape-recorded conversations between appellants and various ASIG employees. The district court excluded the CD because, among numerous other reasons, the intelligible portions of the taped conversations were irrelevant to the remaining claims. Upon review, the tapes contain absolutely no information related to the noose incident, the "you people" comment, or any other evidence supporting appellants hostile work environment claim. Accordingly, the district court did not abuse its discretion by excluding the CD on relevance grounds.[12] *Perez v. Tex. Dep't of Crim. Justice*, 395 F.3d 206, 210 (5th Cir. 2004) ("To be admissible, evidence must be relevant."); *see also* FED. R. EVID. 402.

### iii. Exclusion of Appellants' Aircraft Photograph

Finally, appellants claim the district court erred when it excluded an unauthenticated photograph of an unidentified aircraft at trial. The district court acted within its broad discretion by excluding the photograph. *See Ellison*

---

[11] We also note that appellants contend on appeal that they were offered insufficient time to review the summaries. At trial, appellants did not object to the admission of the summaries on these grounds. That fact aside, the district court specifically provided for a period of time during the trial day for appellants to review the new material with their counsel.

[12] As we find the evidence was properly excluded on relevance grounds, we need not address the district court's laundry list of other reasons for refusing to admit the CD at trial.

*v. Conoco, Inc.*, 950 F.2d 1196, 1206 n.12 (5th Cir. 1992) (declining to find an abuse of discretion where evidence excluded on the basis of counsel's fault).

### 2. *Batson*

Appellants attempt to appeal the district court's denial of their *Batson* challenges as to Jurors 1 and 5. During voir dire, appellants failed to contest or dispute ASIG's proffered reasons for striking these jurors. Accordingly, their *Batson* claims have been waived. *See Wright v. Harris County*, 536 F.3d 436, 438 (5th Cir. 2008) ("[An appellant] waive[s] his *Batson* claim, however, by failing to rebut the [opposing party's] reasons for striking [a contested juror] at the time he raise[s] his claim.").

### 3. "Jury Error"

Finally, appellants claim the jury "erred"[13] when it found for ASIG on the hostile work environment claim presented at trial. In essence, they argue that the jury simply got it wrong. In the absence of any claim of error on the part of the trial court, we have no error to correct, as this court cannot usurp the jury's fact-finding role. *Brennan's Inc. v. Dickie Brennan & Co.*, 376 F.3d 356, 362 (5th Cir. 2004) ("[T]he court may not make credibility determinations or weigh the evidence, as those are jury functions.").

## III. CONCLUSION

For the reasons set forth above, we AFFIRM the district court's judgment, GRANT ASIG's motion to strike, and DENY appellants' motion to strike and motion to file supplemental brief.

---

[13] Appellants contend that our review of this contention falls under a "clearly erroneous" standard, while ASIG argues "plain error" review. Appellants' argument is nothing more than an invitation to replace the jury's judgment with our own, which would be untenable under any standard of review.